**SO ORDERED.**

**SIGNED this 20th day of February, 2020.**



Dale L. Somers
United States Chief Bankruptcy Judge

---

**Designated for online use but not print publication**
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In re:

**Shelly Nichole Pittman,**

                    **Debtor.**

Case No.  19-41057
Chapter 13

**Memorandum Opinion and Order**
**Denying Objection to Confirmation and**
**Granting Motion for Relief from Stay**

This Chapter 13 case was filed shortly after the divorce of Debtor Shelly Nichole Pittman ("Debtor" or "Shelly") and Dennis J. Pittman ("Dennis"). As part of the divorce proceeding, the parties entered into a Separation and Property Settlement Agreement and Parenting Plan ("Settlement Agreement"). If Debtor's Chapter 13 plan is confirmed, multiple terms of the

Settlement Agreement that benefit Dennis will be abrogated. Dennis therefore objects to confirmation. He also moves for relief from stay to return to state court to enforce a term of the Settlement Agreement whereby under certain circumstances he is entitled to a qualified domestic relations order (QDRO) with respect to Debtor's exempt pension plan asset.

Trial on the Motion for Relief from Stay[1] was held on December 19, 2019.[2] At the close of the evidence and after hearing the arguments of counsel, the Court ordered that the record remain open and continued the matter for further consideration at the hearing on Dennis Pittman's Objection to Confirmation of Chapter 13 Plan.[3] Thereafter, the parties agreed that the record contained all of the evidence they would offer at a hearing on the objection to confirmation, but requested that the neither the motion for relief from stay nor the objection to confirmation be placed under advisement until after completion of additional briefing. These briefs have now been filed, and the Court is ready to rule. For the reasons examined below, the Court grants Dennis's Motion for Relief from Stay and overrules the Objection to Confirmation of Chapter 13 Plan.

---

[1] Doc. 22.

[2] Debtor appeared in person and by Adam M. Mack. Dennis Pittman appeared in person and by Todd A. Luckman.

[3] Doc. 18.

## I. Findings of Fact

Dennis filed a petition for divorce in Shawnee County District Court on May 11, 2018. Both he and Shelly were represented by counsel. Both an Agreed Decree of Divorce and the Settlement Agreement were executed by Shelly on July 9, 2019 and by Dennis on July 12, 2019. The divorce decree was filed on July 16, 2019. It recites that "the  Separation and Property Settlement Agreement executed by . . . the parties on the 12th day of July, 2019 . . . is incorporated into this Decree as though fully set forth herein and is made apart hereof and does become the Order, Judgment and Decree of the Court."[4] The Settlement Agreement was not filed until August 19, 2019. There is no evidence that the Settlement Agreement was reviewed by the court or found just and equitable.

 The Settlement Agreement provides for the division of personal property, intangible assets, and real property. It provides that each party shall keep all retirement and/or 401(k) accounts in their individual names. Article IV of the Settlement Agreement addresses obligations and divides them between the parties, with each agreeing to hold the other harmless from the obligations assumed. Paragraph D(26) of Article IV states that in an effort to equalize the parties' debt, Shelly owes Dennis $35,000, to be paid $500 per

---

[4] Exh. 2 at 2.

month at 5% interest, minus Shelly's share of the parties' 2018 tax return. It also states that the $35,000.00 debt is not dischargeable in bankruptcy and

> [s]hould wife default on the monthly payment for (2) two consecutive months or more, the Court will grant husband an unqualified Domestic Relations Order against wife's retirement account. Husband shall be granted the full-unpaid amount including interest. The Court will retain jurisdiction of this case and approve the Unqualified Domestic Relations Order in the event such provision needs to be implicated (sic).[5]

Paragraph G of Article IV provides: "The debts and obligation assigned herein above are in the nature of alimony, maintenance or support, and are 'domestic support obligations' as defined by Section 101 (14A) of the United States Bankruptcy Code."

On or about March 20, 2019, several months before the agreed divorce was granted but after the initial terms of the Settlement Agreement were negotiated, Shelly contacted an attorney's office regarding bankruptcy. She gave data for preparation of schedules to office staff, but she did not consult with an attorney. Her credit counseling certificate is dated April 1, 2019.

Thereafter, the Settlement Agreement was refined by the parties with the assistance of their separate counsel. The parties had agreed in March that as part of the division of debts Shelly would owe Dennis $35,000, but the

---

[5] Exh. 1 at 14-15.

paragraphs addressing discharge in bankruptcy and Dennis's being granted an interest in Shelly's TSP[6] retirement fund if she defaulted in her payments to him were added between March and July.

Based upon the Settlement Agreement, Dennis believed that he would be protected if Shelly filed for bankruptcy. Shelly shared this belief until she met with her bankruptcy attorney on August 21, the date her Chapter 13 petition was filed. The parties now agree that the events of this case do not create a binding agreement about discharge and that Shelly's $35,000 debt to Dennis is dischargeable on completion of a confirmed Chapter 13 plan.

Debtor has four dependant children. She has been employed by her current employer for ten years and also has a part time job. Debtor's schedules report that she has no real property, that her personal property is comprised of two unencumbered vehicles worth $16,000, retirement funds of $64,000 (comprised of a 401k TSP account of $59,000 and a 401k FERS account of $3,843.68), and miscellaneous exempt personal and household items. She has no secured debts. Her unsecured debts include $110,000 in student loans and $86,000 in other nonpriority unsecured debts, which include $40,000 owed to Dennis. Her monthly income is $4,293.42. After subtraction of expenses, her monthly net income is $100.00.

---

[6] Thrift Savings Plan.

Debtor's Chapter 13 plan proposes to pay $100 per month for three years. Administrative fees of $3,155 are to be paid through the plan. A nonstandard provision of the plan addresses the $35,000 obligation of Shelly to Dennis and the reference to discharge in the Settlement Agreement. It states:

> Upon confirmation of the plan, any obligation owed by Debtor to Mr. Pittman under the SPSA [Settlement Agreement] is dischargeable upon completion of the instant case. Further, any obligation to pay a creditor or third party on any debt Debtor was assigned to pay under SPSA, regardless of whether the debt is owed by Debtor alone or jointly by Debtor and Mr. Pittman is dischargeable upon completion of the instant case. Further, Paragraph 26 of the SPSA is unenforceable upon completion of the instant case.

## III. Conclusions of Law

### A. Objection to Confirmation

Dennis objects to confirmation of Debtor's Chapter 13 plan. He does not challenge the plan provision regarding discharge. Rather he contends that the bankruptcy was filed in bad faith and only for the purpose of invalidating the Settlement Agreement. As evidence of bad faith he relies upon the fact that the bankruptcy was filed only two days after the Settlement Agreement was filed in the divorce proceeding. It is noted that it was Dennis's lawyer who did not file the Property Settlement until more than a month after the divorce

6

was granted.

The Court finds that any inference of bad faith which might arise from the timing is refuted when the broader circumstances are considered. Shelly made arrangements to file for bankruptcy before the Settlement Agreement was fully negotiated. She agreed with Dennis to include provisions in the Settlement Agreement to protect his claim against her from discharge. Shelly, like Dennis, believed those provisions would be effective. She learned this was not true only after meeting with her bankruptcy counsel on the date she filed her Chapter 13 petition, after the Settlement Agreement had been filed. Further, Shelly's finances are such that she has need to file for bankruptcy relief independent of her agreement to pay Dennis $35,000.

Dennis's objection to confirmation based upon the contention that the case as filed in bad faith is denied.

## B.    Motion for relief from stay

Dennis also moves for relief from stay to return to state domestic court for amendment or reconsideration of the judgment, which incorporates the Settlement Agreement, to obtain a QDRO granting him an interest in Shelly's TSP retirement account as contemplated in Article IV, D(26) of the Settlement Agreement. Dennis is not seeking relief from stay to obtain payment from Shelly personally.

7

A TSP is a defined contribution plan offered to federal employees that operates similarly to 401(k) plans offered by private employers.[7] Funds held in a TSP, like funds in plans subject to ERISA, are excluded from the Bankruptcy estate by § 541(c)(2).[8] This Court therefore has no jurisdiction to determine interests in the TSP.

Dennis contends that cause for relief from stay exists under 11 U.S.C. § 362(d)(1). It provides, "On request of a party in interest and after notice and hearing, the court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in property." The statute provides that cause includes lack of adequate protection, but cause "is not so limited."[9] "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis."[10]

---

[7] *Njaka v. Kennedy*, No. 12-2712 (JRT/JJG), 2014 WL 4954679, at *2 (Bankr. D. Minn. Sept. 30, 2014).

[8] *In re O'Neal*, 462 B.R. 324, 331 (Bankr. D. Mass. 2011). *See Patterson v. Shumate*, 504 U.S. 753 (1992); *In re Carbaugh*, 278 B.R. 512, 520 (10th Cir. BAP 2002) ( Hallmark ERISA plan is not property of the estate).

[9] *In re Busch*, 291 B.R. 137, 140 (10th Cir. BAP 2003).

[10] *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) (*quoting In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986)).

8

Cause to lift the stay "encompasses a broad category of issues,"[11] including returning to domestic relations court to divide marital property.[12] In *Carbaugh*,[13] the Tenth Circuit BAP affirmed an order granting relief from stay a former spouse to return to Kansas district court to obtain a valid QDRO. The property settlement agreement granted the debtor's ex-spouse a one-half interest in his ERISA qualified retirement plan, but there was no QDRO becasue the divorce had been granted in 1982 when there was not federal law authorizing the administrator of an ERISA plan to segregate the interest of a plan beneficiary's ex-spouse. Prepetition the ex-spouse had initiated proceedings in district court seeking to enforce her rights in the plan, but debtor filed for bankruptcy relief before the QDRO was finalized. The bankruptcy court granted relief from stay to return to state court, and the BAP affirmed. It reasoned that the ex-spouse had been granted an interest in the retirement funds by the divorce decree; that she was seeking relief to enforce that right, not to seek relief from the debtor personally; and that she was in the process of obtaining a valid QDRO when the bankruptcy was filed.

---

[11] *In re Pence*, 581 B.R. 654, 662 (Bankr. D. Utah 2018).

[12] *See 1 Collier Family Law and the Bankruptcy Code* ¶ 5.06[6] (Margaret Dee McGarity, Alan N. Resnick & Henry J. Sommer, eds-in-chief 2019).

[13] 278 B.R. 512 (10th Cir. BAP 2020).

9

Relief from stay was granted in *Jeffers*[14] under circumstances very similar to this case. Debtor was divorced before filing for relief under Chapter 13. The property division provisions of the divorce decree provided that the ex-wife be given a QDRO, but such an order was never entered before the bankruptcy was filed. The debtor's ex-wife moved for relief from stay under § 362(d)(1) to allow her to proceed in state court to obtain the QDRO entitling her to distribution of funds from her former husband's retirement plans. The bankruptcy court observed that cause for relief from stay can arise under a wide variety of circumstances and "the determination of cause for relief from stay in these peculiarly specific circumstances lies with the bankruptcy court's discretion on a case-by-case basis."[15] After examining the divorce decree and Ohio domestic relations law, the court concluded that the ex-wife had a separate property interest in a portion of the debtor's 401(k) plan at the time the bankruptcy was filed, that her interest in those funds was not property of the estate, and the funds were being held "hostage by the automatic stay."[16] The court found cause for relief from stay, and debtor's ex-wife was allowed to proceed to state court to obtain the QDRO necessary for

---

[14] 572 B.R. 681 (Bankr. N. D. Ohio 2017).

[15] *Id.* at 684.

[16] *Id.* at 689.

distribution of her assets.

There is an obvious difference between this case and *Jeffers*. In *Jeffers* the property division order provided that the ex-wife was entitled to a QDRO; in this case the Settlement Agreement provides the divorce court will grant Dennis a QDRO if Debtor defaults on her payments for two consecutive months. With respect to whether cause exists for relief from stay, the Court finds this difference immaterial. Dennis's right to seek a QDRO is being "held hostage" by the stay.

The Debtor's retirement funds are not property of the estate. No creditors have an interest in the funds. Granting relief from stay will have no impact on the bankruptcy estate. This Court lacks jurisdiction to determine if Dennis has an interest in the TSP entitling him to a QDRO; Shawnee County District Court is the appropriate court to make that determination. Absent relief from stay, Dennis is left without a forum to determine his right to the TSP. The Court finds cause to grant relief from stay for the limited purpose for approving a QDRO, if the district court determines that Dennis is entitled to such an order.

In opposition to the motion, Debtor argues that conditions for stay relief are not present because Debtor has equity in the retirement funds and Dennis lacks an actual present interest in the TSP, making relief under §

362(d)2) unavailable. This position overlooks the flexible standard for relief from stay for cause under § 362(d)(1) discussed above. It erroneously "eliminates 'cause' as a separate discretionary basis on which the bankruptcy court may lift the stay."[17]

Debtor also argues that relief from stay should not be granted because a property division obligation is dischargeable in a Chapter 13 case.[18] But Dennis is not seeking and the Court is not granting relief from stay to enforce Debtor's obligation to Dennis; Dennis is seeking and the Court is granting relief from stay to enforce a property right against the TSP. Prepetition Debtor agreed in the Property Settlement that Dennis would have a conditional partial interest in the TSP. Hence when the bankruptcy was filed Dennis had an equitable interest in the Debtor's TSP.[19] The district court will need to determine if the conditions for entitlement to a QDRO are satisfied and, if so, approve the terms of distribution from the TSP. A QDRO awarding Dennis a portion of Debtor's TSP in accord with that Property Agreement would not create a dischargeable personal obligation of the Debtor.[20] The

---

[17] *In re Carbaugh*, 278 B.R. at 526.

[18] 11 U.S.C. §§ 1328(a)(2) (not including § 523(a)(15) exception to discharge).

[19] *In re Long*, 148 B.R. 904, 907 (Bankr. W.D. Mo. 1992).

[20] *See In re Gendreau*, 122 F.3d 815, 818 (6th Cir. 1997) (holding that although the award of a portion of pension benefits could be dischargeable if it were

12

source of Dennis's payment would be the TSP, not Debtor.

For the foregoing reasons, the Court finds that Dennis is entitled to relief from stay to proceed to Shawnee Court District Court to request a QDRO granting him an interest in Shelly's TSP retirement account as contemplated in Article IV, D(26) of the Settlement Agreement.

## III. Conclusion

For the reasons stated above, the Court concludes that Dennis's objection to confirmation on the basis of bad faith filing should be denied and that Dennis should be granted relief from stay for cause to proceed in Shawnee County District Court to seek a QDRO granting him an interest in Shelly's TSP in accord with Article IV, D(26) of the Settlement Agreement. Separate orders granting such relief shall be entered.

**It is so ordered.**

**###**

---

the debtor's personal liability, an interest in pension funds that is enforceable against the pension plan, not the debtor, does not create a personal liability).

13